UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FRANCES JOHNSON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:09-cv-800 (VLB) |
| WATERFORD HOTEL GROUP, INC. | : | |
|     Defendant. | : | January 11, 2011 |

## RULING AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SANCTIONS [Doc. #19]

### I. INTRODUCTION

The plaintiff, Frances Johnson (hereinafter "Plaintiff") brought this action against her former employer, the Waterford Hotel Group, Inc. (hereinafter "Defendant"). The Plaintiff alleges that the Defendant discriminated against her and ultimately terminated her employment on account of her race and/or color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Specifically, the Plaintiff alleges that the Defendant afforded her co-workers more favorable treatment with respect to working equipment, training, workplace assistants, and annual increases at least in part on account of her race and/or color. She further alleges that the Defendant discriminated against her with respect to her compensation, terms, conditions or privileges of employment by subjecting her to numerous corrective actions, disciplines and a termination of employment at least in part on account of her race and/or color.

On June 28, 2010, the Defendant filed a motion seeking sanctions against the Plaintiff under Rule 37(b) of the Federal Rules of Civil Procedure based upon

spoliation of evidence.  See Doc. #19.  Specifically, the Defendant requests that the Court give the jury an adverse inference instruction regarding a journal the Plaintiff maintained in which she contemporaneously recorded certain circumstances concerning her employment with the Defendant, disciplinary warnings she received during her employment, and her interactions with her former manager, Duane Schroder, who she alleges was involved in the Defendant's discriminatory treatment of her.  The Plaintiff discarded the journal prior to commencing this action on May 18, 2009, but shortly after she filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on September 2, 2008.  For the reasons that follow, the Defendant's motion is GRANTED.

## II.  LEGAL STANDARD

Spoliation of evidence is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  Byrnie v. Town of Cromwell Bd. Of Educ., 243 F.3d 93, 107 (2d Cir. 2001) (quotation marks and citation omitted).  The Court has the authority to impose sanctions for spoliation of evidence pursuant to Rule 37(b) of the Federal Rules of Civil Procedure, which provides that if a party fails to obey a discovery order, the district court "may make such orders in regard to the failure as are just," as well under its "inherent power to manage its own efforts."  Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 106-07 (2d Cir. 2002).  A party seeking an adverse inference instruction based upon spoliation of evidence must establish the following three factors:  "(1) that the party

2

having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Id. at 107 (quoting Byrnie, 243 F.3d at 107-12).

### III. DISCUSSION

The Plaintiff argues that the Defendant has failed to carry its burden on all three prongs of the spoliation test. First, the Plaintiff claims that she had no obligation to preserve the journal because this action was not pending or reasonably foreseeable at the time she discarded it. The Defendant asserts, on the other hand, that the Plaintiff's preservation obligation arose no later than September 2, 2008, the date that she filed her complaint with the CHRO. The obligation to preserve evidence "arises when the party has notice that the evidence is relevant to litigation - most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998). District courts within the Second Circuit have specifically held that the obligation to preserve evidence arises once a charge is filed with a human rights agency such as the CHRO. See, e.g., Zubulake v. UBC Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003); Scalera v. Electrograph Systems, Inc., 262 F.R.D. 162, 171 (E.D.N.Y. 2009).

3

Here, the Plaintiff filed her complaint with the CHRO on September 2, 2008, alleging, as she does in this case, that the Defendant discriminated against her on the basis of her race and/or color. She admittedly discarded the journal shortly after she filed her CHRO complaint and approximately eight months before she filed suit in this Court. While the Plaintiff may not have actually been planning to initiate litigation in federal court at the time she discarded the journal, she must have at least contemplated the possibility given her prior filing of a CHRO complaint concerning racial discrimination by the Defendant. See Ciacciarella v. Bronko, No. 3:07-cv-1241 (MRK), 2009 WL 4878723, at *2 (D. Conn. Dec. 11, 2009) (concluding that obligation to preserve plaintiff's secret recordings of conversations with defendant arose at the moment they were made because plaintiff must have contemplated the possibility of litigation at the time). Therefore, the Court finds that the Plaintiff had an obligation to preserve the journal arising at least from the time that she filed her complaint with the CHRO.

With respect to the second prong of the spoliation test, the Plaintiff contends that she did not discard her journal with a culpable state of mind. The Second Circuit has made clear that the culpability prong is satisfied where the party responsible for preserving the evidence in question acted in bad faith, with gross negligence, or even with ordinary negligence. See Residential Funding, 306 F.3d at 108. "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." Zubulake, 220 F.R.D. at 220. The Court has already found that the Plaintiff discarded the journal after her duty to preserve arose. Therefore, she

was at least negligent in doing so. The Defendant further argues that the Plaintiff was grossly negligent in discarding the journal because she had already filed her CHRO complaint at the time and part of her CHRO claim concerned her receipt of disciplinary warnings from the Defendant, the same subject matter memorialized in several of her journal entries. The Court agrees.

Gross negligence "differs from ordinary negligence only in degree, and not in kind," and has been described as a "failure to exercise even that care which a careless person would use." <u>Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.</u>, 685 F. Supp. 2d 456, 464 (S.D.N.Y. 2010) (citations omitted). Here, the Plaintiff discarded the journal shortly after filing her CHRO complaint and after being terminated from her employment even though the journal contained contemporaneous memorializations of allegedly discriminatory actions during her employment with the Defendant, disciplinary warnings she received during her employment, and her interactions with her former manager, Duane Schroder, who she alleges was involved in the Defendant's discriminatory treatment of her. Part of the Plaintiff's CHRO complaint concerned her receipt of disciplinary warnings from the Defendant, which she claimed was the result of her not being afforded with computers and an assistant. Now, in this litigation, she again alleges that the Defendant discriminated against her by affording co-workers with more favorable treatment with respect to working equipment. She further alleges that she was subjected to numerous corrective actions, disciplines, and ultimately termination of employment on account of her race and/or color. The Plaintiff should have known

that the contents of the journal were highly germane to her discrimination claims against the Defendant, rendering its discard grossly negligent.  See Ciacciarella, 2009 WL 4878723, at *3 (concluding that plaintiff's alteration of a secret recording of her former employer was at least negligent, if not grossly negligent, because of the potential importance of the recording to the litigation).

The Plaintiff argues, however, that she did not act with a culpable state of mind because she is a person of color with limited educational background who was not represented by counsel at the time that she discarded the journal.  Clearly, the Plaintiff's race has no bearing on the spoliation analysis.  Moreover, the notion that the Plaintiff was incapable of comprehending her obligation to preserve relevant evidence is belied by her CHRO complaint, which is well-written, uses legal terminology, and evinces an educated individual capable of understanding legal principles and proceedings.  See Doc. #26-2.  Furthermore, as the Defendant points out, the Plaintiff could have obtained information regarding her preservation obligation from the CHRO, since her CHRO complaint was pending at the time she discarded the journal.  Finally, the Plaintiff's explanation given during her deposition that she discarded the journal because she honestly believed she did not need it is inconsistent with her later testimony that she may have kept the journal if it was helpful to her.  Def. Exh. 1, Doc. #20-1, at 178-79, 191.

Finally, the Plaintiff argues that the third prong of the spoliation test is not satisfied because the Defendant has failed to demonstrate that the journal was relevant to its claims or defenses.  "Relevance" in this context means more than

sufficiently probative for purposes of Rule 401 of the Federal Rules of Evidence. Residential Funding, 306 F.3d at 108-09. Instead, "the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction." Id. at 109 (citations and quotation marks omitted). In other words, the Defendant "must demonstrate not only that [the Plaintiff] destroyed relevant evidence as that term is ordinarily understood, but also that the destroyed evidence would have been favorable to [it]." Zubulake, 220 F.R.D. at 221. Nevertheless, the Second Circuit has instructed that courts "must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence, because doing so would subvert the purposes of the adverse inference, and would allow the parties who have destroyed evidence to profit from that destruction." Residential Funding, 306 F.3d at 109 (quotation marks and citations omitted).

The relevance analysis varies depending upon the culpability of the party who destroyed the evidence in question. As the Second Circuit has explained, "[w]here a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." Id. "Similarly, a showing of gross negligence in the destruction . . . of evidence will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party." Id. However, where a party acted with mere ordinary

7

negligence in destroying evidence, the opposing party seeking an adverse inference must establish relevance through other evidence, such as deposition testimony regarding the nature of the missing documents. Id. at 109; see also Zubalake, 220 F.R.D. at 221 ("This corroboration requirement is even more necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him.") (citations omitted).

As discussed above, the Court finds that the Plaintiff acted with gross negligence in discarding the journal. Therefore, the journal's relevance may be presumed. See Residential Funding, 306 F.2d at 109 ("where a party seeking an adverse adduces evidence that its opponent destroyed potential evidence . . . in bad faith or through gross negligence, . . . that same evidence of the opponent's state of mind will frequently also be sufficient to permit a jury to conclude that the missing evidence is favorable to the party"); Ciacciarella, 2009 WL 4878723, at *3 ("If a party acted in bad faith or was grossly negligent, that is generally sufficient to establish relevance").

Moreover, even assuming that the Plaintiff acted with only ordinary negligence in discarding the journal, the relevance prong is nevertheless satisfied because the Defendant has adduced sufficient evidence that the journal was favorable to it. Specifically, the Defendant has provided excerpts from the Plaintiff's deposition transcript. During the relevant portions of her deposition, the Plaintiff testified that she recorded incidents at work that "bothered" her in the journal. Def.

8

Exh. 1, Doc. #20-1, at 190. These incidents included write-ups and other disciplinary actions taken against her by her former manager, Duane Schroder, that she believed to be unfair. Id. at 179-80, 190. She further testified that she recorded certain comments made to her by Schroder. When asked to cite a specific example of an entry she made in her journal, the Plaintiff recounted an incident in which Schroder asked her if she was Irish because the jewelry she was wearing was an Irish symbol. Id. at 190. The Plaintiff also recounted an incident in which she was warned that she could be held accountable and disciplined if broken wine glasses were found in the dishwasher. Id. at 179-80. In response to questioning from opposing counsel, the Plaintiff indicated that she may have kept the journal if it was helpful to her. Id. at 191. Based upon this testimony, it may be inferred that the journal was not helpful to her, and therefore favorable to the Defendant's position in this litigation.

Such an inference is further supported by the allegations of the Plaintiff's CHRO complaint. The CHRO complaint was not a compilation of the contents of the journal. Instead, the CHRO complaint consisted of one page of factual allegations asserting that the Defendant intentionally failed to provide her an assistant and the proper computers to effectively manage her department as it had done for Caucasian department heads, which directly resulted in her being disciplined for having low scores in her performance reviews. Doc. #26-2, at 2. There is no indication from the Plaintiff's deposition testimony that she had memorialized these allegations in her journal, or that anything included in her journal was incorporated into the CHRO complaint. The fact that the CHRO complaint failed to incorporate

her journal entries bolsters the inference that the contents of the journal did not in fact support her discrimination claims in this case, and therefore were favorable to the Defendant's position.

Accordingly, the Defendant has sufficiently demonstrated that the journal contained relevant evidence, and therefore it is entitled to an adverse inference instruction.  See Cicciarella, 2009 WL 4878723, at *3 (holding that defendants, plaintiff's former employers, were entitled to an adverse inference instruction where plaintiff was negligent, if not grossly negligent, in altering a secret recording of one of the defendants); Doe v. Norwalk Community College, 248 F.R.D. 372, 381 (D. Conn. 2007) (holding that party was entitled to adverse inference due to opposing party's grossly negligent failure to preserve relevant evidence).  At trial, the Court will give the jury an adverse inference instruction stating that the contents of the discarded journal would have been favorable to the Defendant and unfavorable to the Plaintiff with respect to the Plaintiff's employment discrimination claims under Title VII.

The Defendant also requests an award of costs, including reasonable attorney's fees, incurred in connection with its motion for sanctions.  An award of costs "may be appropriate to punish the offending party for its actions or to deter [the] litigant's conduct, sending the message that egregious conduct will not be tolerated."  Doe, 248 F.R.D. at 381 (citing Chan v. Triple 8 Palace, Inc., No. 03CIV6048(GEL)(JCF), 2005 WL 1925579, *10 (S.D.N.Y. Aug. 11, 2005)).  Further, such an award also "serves the remedial purpose of making the opposing party whole for

costs incurred as a result of the spoliator's wrongful conduct." Id. "[C]ompensable costs may arise either from the discovery necessary to identify alternative sources of information or from the investigation and litigation of the document destruction itself." Id. Here, the Defendant has not articulated any costs it incurred in connection with identifying alternative sources of information. Further, while the Court has found that the Defendant acted with gross negligence in discarding the journal, there is no evidence of bad faith. Therefore, in its exercise of discretion, the Court declines to award costs incurred by the Defendant as a result of its preparation of the instant motion for sanctions. An adverse inference instruction will adequately redress the Defendant's grossly negligent conduct.

## IV. CONCLUSION

Based upon the above reasoning, the Defendant's motion for sanctions [Doc. #19] is GRANTED. The Court will give the jury an adverse inference instruction at trial that the contents of the discarded journal would have been favorable to the Defendant and unfavorable to the Plaintiff with respect to the Plaintiff's employment discrimination claims under Title VII.

IT IS SO ORDERED.

       /s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: January 11, 2011.